Judge Robertson
delivered the opinion of the Court.
At the March term, 1820, of the Cumberland circuit court, the appellee, (Wilson) obtained a judgment against Thomas M. Emmerson, Edwards *64 and Milton King, Anthony Thornton and John Fíela, in a petition and summons, for $900, with interest from the 2d. October, 1819, and costs.
On the 25th of July, 1820, the defendants in the judgment, with Robert Galbreath, Wm. Cole, John M. Emmerson and Henry Cary, as their sureties, re-plevied it for one year.
On the 26th of July, 1821, a fieri facias w as issued on the replevin bond, on which the return was “stopped by injunction.”
In October, 1823, Wilson filed a bill in chancery against ail the obligors in the replevin bond, alleging that they were insolvent, and that a fieri facias had been issued against them, on the replevin bond, and was returned “no propertythat one of them (Cary) had obtained a judgment, in the Cumberland circuit court, against Lemuel Stockton and William Frogg, for $357, with interest and costs; that Josiah Brummel owed Cary upwards of $2,000; that it was probable that Brummel also owed J. M. Emmerson; that Granville Bowman held a mortgage on a slave of Robert Galbreath, for a sum less than his value. The i bill, therefore, prayed for an injunction against the obligors in the replevin bond, and against Stockton, Frogg, Brummel and Bowman, ;who were prayed to be made defendants,) and for a decree subjecting the] aforesaid choses to the satisfaction of Wilson’s debt, j
It does not appear from the record, that any injune; tion was granted on this bill, or that the subpmna which issued on it, was ever served on any of the person! against whom it issued.
At the April term, 1824, an amended bill was filed alleging that Cary was endeavoring, fraudulently b transfer to Brummel, his judgment against Stockto and Frogg, and that John M. Emmerson either owne some slaves, who were in the possession of his brothei in-law, Benjamin Tobin, or that he had sold the slavt to B. Tobin; who had executed notes for the considi ration, to his father,- Robert Tobin; in trust for J. ft Emmerson, and therefore, praying for injunctioi against Cary and Brummel, and R. and B. Tobin, at for a decree either subjecting the slaves, or the not for them, to the satisfaction of the replevin bond.
*65 A subpoena, with an injunction, was served on R. Tobin, on the 15th of June, 1824, and on B. Tobin on the 15th of May, 1824, a subpoena had been left at R. Tobin’s house, with one of his sons, on the 17th of April, 1824.
John M. Emmerson, R. Tobin and B. To'bin answered this amended bill. They all insist, in their answers, that B. Tobin had purchased the slaves bona fide, and for a valuable consideration; $>100 of which had been paid at the time of the purchase, in commonwealth’s paper, and that for the, remainder, he had executed his notes to R. Tobin, in trust for J. M. Emmerson; one for $350, payable .on the 10th of March, 1824, and the other for $>400', payable some, time in August, 1826; and that, “about, the middle of May, 1824, B. Tobin had paid off the note for $350i
In amended answers by R. Tobin and Emmerson, they say that this money was paid about the middle of April j 1824. Emmerson also says, in his answer,“that early in the month of May, 1824, at his request, Robert Tobin assighed to him the aforesaid notes,” and, “that, before the institution of this suit, he (Emmer-son) assigned the last note, to-wit: the $400 one, to Hiram Emmerson, for a good and valuable consideration and in good faith.”
B. Tobin, in his answer, states that the $400 note, “he is informed and believes', was assigned to Hiram Emmerson, before the institution of this suit, whom this defendant prays may be made, a parly hereto; that he be compelled to appear and answer, file the note and interplead, so that this honorable court may determine who has the /right to said note, and this defendant submits and is willing to pay the same to whomsoever this court shall decree it to be paid.”
At the April term, 1827, the case, as to R. and B. Tobin, was heard, and the court decreed that the bill be dismissed as to R. Tobin, at the complainant’s cost, and that B. Tobin pay the complainant $400, with six per cent, interest thereon, from the last day of August, 1826, until paid; on the payment of which, the replevin bond should be credited with that amount.
*66 This writ of error is prosecuted by B. Tobin, to reverse this decree.
Four errors are assigned. “1st. That the proper parties were not before the court. 2d. That the interest decreed to be paid is erroneous and against law. 3d. That the proper credits are not allowed in the body of the decree. 4th. That the whole decree is without form and illegal.”
The only objection to the-parties which has been suggested in argument, is, that Hiram Emmerson should have been made a party.
There is no-proof that Hiram Emmerson has, or ever had any interest in the suit. The note has not been exhibited; and the only intimation in the record, that Hiram had any interest in it, is what is suggested in the answers of J. M. Emmerson and B. Tobin. This is a matter in avoidance, and, therefore, it was not the duty of the court or of Wilson, to notice it, unless there had been some evidence to establish the fact. B. Tobin does not even affirm the fact pos-sitively, in his answer. He was interested in it. He could easily have ascertained how it was. If he knew or believed that the note had been actually and bona fide assigned, it was his duty to his own interest, to have made the assignee a party. He prayed that he might be compelled to interplead, but no attempt was made to compel an interpleader. The court was not bound to make any order for process to issue, on the answer of B. Tobin. He might have procured a subpcena to issue against Hiram Emmerson, and thus have brought him before the court, in such a manner as to have had it ascertained whether, as assignee, he was entitled to the amount of the note. And it seems to us, that if he apprehended that he would be liable to H. Emmerson, after a decree .in favor of Wilson, he would have taken care that proper steps should he •taken to have Hiram’s interest investigated and determined,
If Tobin’s answer were intended as a cross bill of interpleader, it was insufficient.
It did not state that Hiram Emmerson claimed any right to the note, or would attempt to assert any. *67 Such an allegation, in substance, is indispensable, otherwise the bill will be ineffectual. See Cooper’s equity, 46-8-9; Mitford’s Pleading, 125-6. '
i,¡u 0¡-;n_ terpleader, ““'í be affi" ed^hauliere is no collusion between pl’tff j*he Arties, 6 P
If there had been an allegation that the note had been assigned to Hiram, it would not necessarily result, that he had acquired such a right to it as could or would be enforced; and the dates, the generality and indistinctness of the answers, and many other more minute circumstances which appear, and others which might be inferred, would incline the court to the opinion, that II. Emmerson could never enforce any claim to the note, for his own benefit, of that if he could, there can be no danger of his success. However, this is only suggested-to strengthen the unfavorable construction of Tobin’s answer. A demurrer would be sustained to a bill of interpleader, containing no other or more direct allegations than this answer contains. “As the sole ground on which the jurisdiction of the court, in this case,'is supported, is the danger of injury to the plaintiff, from the doubtful titles of the defendants, the court /will not permit the proceeding to be used collusively, to give an advantage to either party; nor will it permit the plaintiff to delay the payment of money- due- from him, by suggesting a doubt to whom it is due; therefore, to a bill of interpleader, the plaintiff must annex an affidavit, that there is no collusion -between him and any of the parties.” Mitford, 48-9; lb. 126; Cooper’s Pleading, 50.
Tobin’s answer contains no such allegation, and be made no such affidavit. His allegation amounts only to a doubt as to whether H. Emmerson may not have some right. Moreover, Tobin ought to have tendered the money in court, or have offered, in his answer, to do so whenever it should become due. Cooper’s Pleading, 50; Mitford, 49-126, and the authorities cited in each.
If; therefore, he shall be in danger of being forced to pay the amount of the note twice, it must be ascribed to his own faultior omission.
Wherefore, the court did not err in. rendering, a decree before H. Emmerson was a party..
When it is the duty of a party to tender, or offer to tender, money in court, if he fail to do it, iie is liable to a decree for interest.
Whether there are any other persons who ought to have been made parties by Wilson, will be determined presently.
As it was the duty pf Tobin to have tendered- of offered to tender in court, as soon as it should be due, the $400, it was proper to decree interest against him, although he was injoined from paying the money to J. M. Emmerson. He has manifested an indisposition to pay the amount of the note to Wilson, as J. M. Emmerson’s creditor. He has not shown that he has been prejudiced by the injunction; that he had the money ready, and that it was rendered unproductive by the injunction. Nor was he restrained by the injunction from paying the money to Hiram Emmerson.
The only restraint on such a payment, was then’s pendens.'’’’ If, therefore, Hiram had a good legal ■right to the note, in preference to the claim of Wilson, Tobin would have hazarded nothing in paying the amount of it to him. He was not prevented by Wilson’s injunction, from making such a payment, But if he had paid the money to H. Emmerson, and Wilson had established his equitable right to it, there was danger of a second payment; and, therefore, the money was not paid. Tobin’s forbearance to make payment, was prudential and proper, but it was not coerced by injunction.
In any view of this question, therefore, we can perceive no error in the decree for interest.
Nor can we detect any error in the amount decreed, unless it had been error to decree the interest.
The decree is not as formal as it might have been. But it is substantially good. It is plain and intelligible, and its effect is the same as it would have been, if there had been more regularity and precision in its form.
As it was money which Tobin owed, the court could not have subjected it to an execution, on the replevin bond. It was proper, therefore, to decree the payment of it to Wilson. This decree may be enforced hs any other decree for money.
Error to reñ-subjecting’ closes in action of one ® Sbond" $0 satisfao- ’ tion of re-5^t”oUt°ma-k¡ng prinoi-pal obligor and the other securities in replevin bond Pariies-
Mustbe^i; to authorize bill to subject y creditor.,
tnowled^eof def’t. ifalleg-ed in bill and not deni?d fitted’lSa<'
So far, therefore, as the argument of counsel has called the attention of the court to any error, none exists.,.. -
But there is error in the record, and the assignment ís sufficiently comprehensive to embrace it, and might avail, if it had been made by the person injured. J. M. Emmerson was only a surety. Before it would be proper, therefore, to render any decree in Wilson’s favor, against him or to his prejudice, it was necessary that the principal obligors and his co-sureties, should have been made parties. The reason for this is so obvious, that it is only necessary to suggest the fact.
mi . . . i he original bill was filed against several other persons, strangers to the replevin bond, and it is still pending. Against these persons, large sums are claimed, It would have been proper, therefore, to have made some disposition of the claim against them.
But it does not appear that any subpoena on the original bill, was ever served on any person, conse* quently, none of the persons prayed to be made defendants to it, were ever parties. J. M. Emmerson himself, was pot made a party to it; nor would he have been a party to that or to the amended bill, if he had not voluntarily answered. Nor does it appear, as to any of the other parties, except John M. merson, that a fieri facias on the replevin bond, had ever been returned, “no property,” without such a .return, Wilson had no right to prosecute this suit. Emmerson was a party to the replevin bond, and, therefore, knew whether there had been such a return or not; and, consequently, as the fact must be presumed to have been within his own knowledge, and is charged in the bill, and is not denied in his answer, it must be considered as admitted by him; and being admitted by him, Tobin cannot require proof of it, because he is only called on to pay what he owes Emmerson, and is liable to this suit if Emmerson be liable. His liability to the suit being incidental to that of Emmerson, and Emmerson’s answer virtually admitting his own liability to it, cure the .defect of proof as to the return on the fieri facias, so far as they are concerned.
Tobin and Wickliffe, for appellant; Monroe, for ap-pellee.
But the errors which we have noticed are suchas operate to the prejudice of Emmerson only. He alone could complain. He has not complained. The appeal is by Tobin alone. So far as he is affected by it, the decree has been shown to be free from error.
And after this case shall have been disposed of, a •writ of error by Emmerson, (if he could prosecute one,) would not avail him essentially,, and could not benefit Tobin at all.
Wherefore, the decree of the circuit court is affirmed.